## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DAVID LAWRENCE SMITH,

               Petitioner,

v.

DAN SCHNURR, *Hutchinson Correctional Facility Warden,*

               Respondent.

Case No. 18-3298-DDC

---

### MEMORANDUM AND ORDER

This matter comes before the court on prisoner David Lawrence Smith's pro se[1] Petition for Writ of Habeas Corpus (Doc. 1). The State of Kansas filed an Answer and Return (Doc. 18). Mr. Smith did not file a traverse and the time to do so has now passed. Under 28 U.S.C. § 2254, Mr. Smith attacks his three state court convictions for aggravated indecent liberties with a child. For the following reasons, the court denies federal habeas relief.

### I.      Background

The Kansas Court of Appeals summarized the facts of Mr. Smith's state court convictions this way:

> On July 23, 2011, a woman named Amanda contacted the Atchison County Sheriff's Department to request a civil standby while she helped her sister, Gayla Robinson, and Robinson's children move out of a residence in that county. Two officers, Undersheriff Larry Myer and Sergeant Jeremy Peak, accompanied Robinson's two sisters and their husbands to Robinson's residence. Robinson and her four children lived with her boyfriend, Smith.

---

[1] Because Mr. Smith proceeds pro se, the court construes his filings liberally. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that courts must construe pro se litigant's pleadings liberally and hold them to a less stringent standard than formal pleadings drafted by lawyers). But, under this standard, the court does not assume the role as Mr. Smith's advocate. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). The court does not construct arguments for Mr. Smith or search the record. *Id.*

When the parties arrived at the residence, Robinson was outside with her three sons working on and cleaning an air conditioner unit.  The home's main air conditioner had broken, and they had installed a window air conditioner in Robinson and Smith's bedroom earlier that day.  Once the window unit was installed, Smith went into the bedroom to lie down.  Robinson testified she and her daughter, B.N.M., also went into the bedroom to lie down.  Smith was naked but had a blanket over him up to his waist.  Robinson testified it was normal for him to sleep without clothes.  Robinson claimed Smith then sent her outside to work with the boys on the other air conditioner so they could install it in the boys' bedroom.  Smith denied telling Robinson to leave; he claimed he had gone to sleep and did not know B.N.M was in the room with him.  B.N.M. testified she was watching a movie and Smith was sleeping.

Outside, Robinson told the officers things were bad between her and Smith so she needed to leave and go back to Arkansas with her sisters.  Robinson had not told Smith she was planning on leaving as she was afraid to tell him because he had a bad temper and would hit her and her children.

Robinson indicated to the officers that Smith was inside the residence taking a nap.  The officers knocked on the front door, but no one answered.  Robinson then gave them permission to go inside and told them Smith was in their bedroom.  Myer knocked on the bedroom door, and it swung open.  He saw Smith lying on his side naked on the bed with a blanket only draped over his calves and upper thigh.  B.N.M. was also on the bed next to Smith. Myer testified he saw B.N.M.'s arm on Smith down around the lower part of his stomach or groin area.  B.N.M. testified her hand was on his side.  B.N.M. jumped off the bed and out of the bedroom.  As she walked by Peak, he asked if she was ok and B.N.M. shook his hand and said thank you.

Smith got dressed, and the officers told him Robinson and the children were going to leave.  Smith was cooperative and gave Robinson a truck to transport her belongings.  After loading the truck, Robinson, her four children, Robinson's sisters and their husbands, and Smith all went to the sheriff's office.  B.N.M. rode to the office with her Aunt Amanda and Amanda's husband.

Myer interviewed B.N.M., who told him Smith had been sexually abusing her since she was age 7.  She told Myer that since moving to Kansas in September 2010, Smith would send her mother and brothers outside, then he would sit on the couch or a chair, have her remove her clothes, bend over, and would insert his fingers in her vagina.  He would also remove her shirt and bra and rub her breasts.  She said it had occurred 15 to 20 times from September 2010 through July 2011, although she did not identify any specific dates.  She told them the last time it had occurred was 2 or 3 weeks prior to the police coming on July 23, 2011.  She said she had not told anyone because she was scared Smith would hurt her or her brothers.  Myer called the University of Kansas Hospital, which advised that a medical examination

of B.N.M. was not needed because she said sexual contact had not occurred for weeks.

During the trial, B.N.M. testified she had turned 14 years old on February 22, 2011, and sexual contact with Smith had occurred several times in the year before and after her birthday.  Before trial, B.N.M. had not given any specific dates of when the sexual abuse occurred; however, at trial she said she remembered two specific dates.  B.N.M. testified that on Father's Day, June 19, 2011, Smith sent Robinson and B.N.M.'s three brothers out to take care of the dogs.  He then sat on the edge of the couch and made B.N.M. pull down her pants; he put her hand on his penis and inserted his fingers into her vagina.  She testified the same thing happened on July 10, 2011, Smith's birthday.  She did not give other specific dates or number of times other incidents occurred, but she claimed sexual contact occurred multiple times while she was 13 years old and multiple times between February and June 2011 when she was 14.  She testified the sexual encounters were always the same.

B.N.M claimed no sexual contact occurred on the day Myer and Peak were in the home, and Smith was not charged with anything related to that date.  B.N.M. testified she had never told anyone about the sexual contact because she was afraid of Smith and was afraid he would hit her, her brothers, or her mother because he had done so before.  In December 2010, an SRS worker visited B.N.M. and her family, and B.N.M. told the worker she was not afraid of Smith.  B.N.M. never mentioned any sexual abuse.

The defense introduced two birthday cards and one Father's Day card into evidence through Robinson.  One of the birthday cards was to Smith from B.N.M. and her siblings.  Inside, B.N.M. wrote:  "Happy birthday, Dad. I hope you have the best 52nd birthday ever and hope you get everything you want and wish for.  You mean so much to me, Dad.  I love you with all my heart.  I love you always."  In the Father's Day card, B.N.M. wrote:  "Happy Father's Day.  I love you.  Hope you have the best Father's Day ever.   I love you with all my heart."   B.N.M. acknowledged that while she had written that she loved Smith, she was angry and upset about the sexual contact and she did not love him or want to be with him. Smith denied having sexual contact with B.N.M., and he denied ever threatening her or that she was afraid of him.  On February 15, 2012, the jury found Smith not guilty of three counts of rape and guilty of three counts of aggravated indecent liberties with a child.

On February 22, 2012, Smith's trial attorney, John Kurth, filed a motion for new trial and judgment of acquittal.  On April 2, 2012, Smith filed a pro se motion for new trial and judgment of acquittal for misrepresentation of counsel.  On April 5, 2012, Kurth filed a second motion for a new trial or judgment of acquittal.  In his pro se motion for new trial, Smith alleged ineffective assistance of counsel of Kurth, so the court appointed a new defense attorney, J. Phillip Crawford.

Crawford filed another motion for new trial and a motion for judgment of acquittal on July 3, 2012.  Crawford also filed an objection to the presentence investigation report and a motion to declare the hard 25 life sentence under K.S.A.2010 Supp. 21–4643 unconstitutional.  The district court held an evidentiary hearing on July 12, 2012, at which it addressed all the filed motions for new trial.  Kurth and Smith testified.  The district court denied Smith a new trial.

On August 2, 2012, Smith filed a pro se motion to vacate his convictions and a motion alleging ineffective assistance from Crawford, asking the district court to dismiss Crawford and to allow Smith to represent himself.  Smith waived his right to counsel and filed a pro se motion for judgment of acquittal on September 6, 2012.  On September 10, 2012, Smith filed another pro se motion for new trial and then on September 20, 2012, Smith filed a second pro se motion for new trial or acquittal and a motion objecting to his presentence investigation report.  On September 20, 2012, the district court denied Smith's pro se motions for new trial and judgment of acquittal and sentenced him to life plus 154 months in prison.

*State v. Smith*, No. 109,165, 344 P.3d 396, 2015 WL 1122951, at *1–3 (Kan. Ct. App. Mar. 6, 2015) (unpublished opinion) ("*Smith I*").

Mr. Smith appealed his conviction to the Kansas Court of Appeals.  *Id.* at *1.  He argued:

the district court committed reversible error by:  (1) admitting a photograph of a latch on the victim's brothers' bedroom door; (2) denying his motions for a new trial; (3) responding to two jury questions in writing; (4) failing to include in the jury instructions the element for aggravated indecent liberties that the defendant must be over the age of 18; (5) using a special question on the verdict form; (6) imposing a life sentence which is categorically disproportionate in violation of the Eighth Amendment to the United States Constitution; (7) designating his pre-[Kansas Sentencing Guidelines Act] in-state and out-of-state convictions as person felonies; and (8) using his criminal history to increase his sentence.

*Id.* at *1.  The Kansas Court of Appeals vacated Mr. Smith's sentence and remanded the case to the district court for resentencing.  *Id.*  It did so "[b]ecause the district court improperly classified Smith's pre-[Kansas Sentencing Guidelines Act] out-of-state conviction as a person felony[.]"  *Id.*  But the appellate court affirmed Mr. "Smith's convictions and the district court in all other respects."  *Id.*  Mr. Smith filed a petition for review to the Kansas Supreme Court which remanded his case with the Kansas Court of Appeals only on the issue of classifying his previous out-of-state convictions.  *State v. Smith*, No. 109,165, 376 P.3d 93, 2016 WL 2842210 at *2–3

4

(Kan Ct. App. May 13, 2016) (unpublished opinion).  The Kansas Court of Appeals then affirmed the district court's classification of Mr. Smith's prior out-of-state conviction as a person felony for sentencing purposes.  *Id.*

Mr. Smith then filed a motion for post-conviction relief under Kan. Stat. Ann. § 60-1507 (habeas corpus) in the District Court of Atchison County, Kansas.  *Smith v. State*, No. 118,161, 423 P.3d 564, 2018 WL 3796017, at *1 (Kan. Ct. App. Aug. 10, 2018) (per curiam) ("*Smith II*"). In his motion to the trial court, Mr. Smith claimed:

> (1) the transcripts and other legal documents were altered; (2) he was denied his constitutional right to a public trial; (3) the State failed to present sufficient evidence to support his guilty verdicts; (4) trial counsel, John Kurth, provided ineffective assistance of counsel; (5) Kurth violated Smith's right against self-incrimination; and (6) the jurors' verdicts were inconsistent.

*Id.*  The trial court "conducted an evidentiary hearing during which only Smith testified."  *Id.* The trial court concluded that "[t]he only issue properly before [it] was ineffective assistance of counsel" because Mr. Smith "had raised the first, third, and sixth issues before [the trial court] in his motion for a new trial, which the court heard and denied" and it "found that Smith should have raised the second and fifth issues at the district court level, but he did not."  *Id.* at *2.  The trial court determined "constitutional issues not raised on appeal may be raised later only with a showing of exceptional circumstances."  *Id.*  And, in denying Mr. Smith's state habeas petition, the trial court "found that [Mr.] Smith presented only conclusory statements unsupported by evidence."  *Id.*

Mr. Smith then appealed the trial court's denial of his state habeas petition to the Kansas Court of Appeals.  *Id.*  The Kansas Court of Appeals noted Mr. Smith had "provided the only testimony at the evidentiary hearing and, although he presented no evidence to support his claims, he relies on the State's failure to present evidence to rebut his testimony."  *Id.*  It

explained the doctrine of res judicata precluded Mr. Smith from raising the "claims of altered trial transcripts, insufficient evidence, and jury inconsistency" because Mr. Smith raised those issues in his motion for a new trial which the district court denied. *Id.* And, it held that Mr. Smith "should have raised the issues of a public trial and right against self-incrimination at trial, but he did not . . . [and the] court found Smith should have addressed the issues on direct appeal, but he did not." *Id.* at *3. So, the Kansas Court of Appeals affirmed the trial court's holding that Mr. Smith could not raise his claims, save for ineffective assistance of counsel, in his Kan. Stat. Ann. § 60-1507 motion. *Id.* The Kansas Court of Appeals also affirmed the trial court's denial of Mr. Smith's ineffective assistance of counsel claim because Mr. Smith "had failed to present evidence to support his assertion that Kurth provided deficient representation or to show that Smith had suffered any prejudice." *Id.* at *5. In sum, the Kansas Court of Appeals affirmed the Atchison County District Court's decision denying Mr. Smith's motion under Kan. Stat. Ann. § 60-1507. *Id.*

Mr. Smith did not ask the Kansas Supreme Court to review the Kansas Court of Appeal's decision. *See* Docket, *Smith v. State*, No. 118,161 (Kan. Ct. App.). On December 19, 2018, Mr. Smith filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 with our court. Doc. 1. The Petition asserts six grounds for relief:

1. Mr. Smith's trial transcripts and other legal documents were altered.

2. The trial court erred in closing Mr. Smith's trial to the public.

3. Mr. Smith's convictions are based on insufficient evidence.

4. Mr. Smith received ineffective assistance of counsel.

5. Mr. Smith's trial attorney compelled Mr. Smith to testify against himself.

6. The trial court erred in allowing inconsistent jury verdicts.

Doc. 1 at 5–12; *see also* Doc. 2 at 2.  These are the same six grounds Mr. Smith raised in his

§ 60-1507 motion to the trial court and in his appeal of that claim to the Kansas Court of

Appeals.  *See* Kan. Stat. Ann. § 60-1507 Motion, *Smith v. State*, No. 2016CV51 (Atchison Cnty.

Dist. Ct. June 16, 2016); Appellant Br., *Smith v. State*, No. 17-118,161, 2017 WL 5894952, at *3

(Kan. Ct. App. Nov. 22, 2017).  After describing the prevailing legal standard in Part II, the court

analyzes all six claims in Part III.

## II.    Legal Standard Governing Federal Habeas Petitions

A federal court reviews a state prisoner's challenge to matters decided in state court

proceedings under the Antiterrorism and Effective Death Penalty Act ("AEDPA")*.  Lockett v.*

*Trammel*, 711 F.3d 1218, 1230 (10th Cir. 2013).  This act "requires federal courts to give

significant deference to state court decisions" on the merits.  *Id.*  A federal court may not grant a

state prisoner habeas relief for "any claim that was adjudicated on the merits in State court

proceedings" unless the prisoner can show one of the following:  (1) that the adjudication

"resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States;" or (2) that

the adjudication "resulted in a decision that was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)–

(2).

The phrase "'[c]learly established [federal] law'" refers to Supreme Court holdings, but

not dicta.  *Lockett*, 711 F.3d at 1231 (quoting *House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir.

2008)).  An adjudication is "'contrary to' a clearly established law if it 'applies a rule different

from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than

[the Supreme Court has] done on a set of materially indistinguishable facts.'"  *Id.* (quoting *Bell v.*

*Cone*, 535 U.S. 685, 694 (2002)).  And, an adjudication is "an 'unreasonable application' of clearly established federal law if it 'identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of petitioner's case.'"  *Id.* (quoting *Wiggins v. Smith*, 539 U.S. 510, 520 (2003)).  To determine whether a state court unreasonably applied clearly established United States Supreme Court precedent, the court considers the specificity of the governing legal rule.  *Frost v. Pryor*, 749 F.3d 1212, 1223 (10th Cir. 2014).  "The more general the rule . . . the more leeway [state] courts have in reaching outcomes in case-by-case determinations."  *Id.* (citations and internal quotation marks omitted).  Federal habeas relief is appropriate "only when the petitioner shows there is *no possibility* fair minded jurists could disagree that the state court's decision conflicts with [Supreme] Court's precedents."  *Id.* (citation and internal quotation marks omitted).

A factual determination "made by a State court shall be presumed to be correct" unless petitioner presents clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless [it is] objectively unreasonable in light of the evidence presented in the state-court proceeding." (citations omitted)).  The petitioner—Mr. Smith—bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

## III.    Analysis

The State asks the court to deny certain claims of Mr. Smith's on procedural grounds and others on the merits.  For reasons explained below, the court denies all six grounds that the Petition asserts.  The court addresses each claim, below.

### A.  Mr. Smith Procedurally Defaulted on Grounds One, Two, Three, Five, and Six

The State argues Mr. Smith procedurally defaulted on five of his six grounds because he failed to raise the arguments properly in state court.  *See* Doc. 18 at 12–17, 21–22.  Mr. Smith never argues the state court's denial of his claims was improper.  *See* Docs. 1, 2.  The five grounds include:

> **Ground One:**  Mr. Smith's trial transcripts and other legal documents were altered.
> **Ground Two:**  The trial court erred in closing Mr. Smith's trial to the public.
> **Ground Three:**  Insufficient evidence to support Mr. Smith's convictions.
> **Ground Five:**  Mr. Smith's trial attorney compelled Mr. Smith to testify against himself.
> **Ground Six:**  The trial court erred in allowing inconsistent jury verdicts.

So, the State argues, because Mr. Smith failed to raise these grounds properly in state court, this court cannot grant federal habeas review.  *See id.*  The court agrees.

Procedural default occurs when a petitioner fails to exhaust his state court remedies as 28 U.S.C. § 2254(b)(1) requires.  "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *id.* at 848 (explaining that courts consider exhaustion first, then ask whether the petitioner "has *properly* exhausted those remedies, *i.e.*, whether he has fairly presented his claims to the state courts").  Generally, to exhaust state court remedies, a § 2254 petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *Id*. at 845.  But, the Kansas Supreme Court does not require a party to appeal an adverse decision by the Kansas Court of Appeals to exhaust all available state remedies.  *See* Kan. Sup. Ct. R. 8.03B ("a party is not required to petition for Supreme Court review under Rule 8.03 from an adverse decision of the Court of Appeals to exhaust all available state remedies").  And, the Tenth Circuit has reasoned

that state rules defining exhaustion of state remedies control for purposes of AEDPA review. *See Ellis v. Raemisch*, 872 F.3d 1064, 1081–82 (10th Cir. 2017) (affirming district court's holding that petitioner exhausted all available Colorado state remedies because Colorado Appellate Rule 51.1 provides that a "litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies" (internal quotation marks omitted)).  So, Mr. Smith was not required to appeal the Kansas Court of Appeals's decision denying his state habeas petition to exhaust available state remedies.

Procedural default also can occur when:  (1) "a state court clearly dismisses an issue on a state procedural ground that is both independent of federal law and adequate to support the judgment;" or (2) "the petitioner fails to exhaust available state remedies and would be procedurally barred from presenting the issue if it was brought in state court."  *Bowles v. Kansas*, No. 15-3049-JTM, 2016 WL 3759508, at *2 (D. Kan. July 14, 2016); *see also Coleman v. Thompson*, 501 U.S. 722, 729–30, 735 n.1 (1991).  The first category—independent and adequate state law—bars "federal habeas" relief when state courts decline "to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Coleman*, 501 U.S. at 729–730.  "To be adequate, a state's procedural rule must have been firmly established and regularly followed when the purported default occurred."  *McCracken v. Gibson*, 268 F.3d 970, 976 (10th Cir. 2001) (internal quotation marks omitted).  The Supreme Court has explained why.  "Because [a federal court] has no power to review a state law determination that is sufficient to support the judgment, resolution of any independent federal ground for the decision could not affect the judgment and would therefore be advisory."  *Id.* at 729 (citing *Herb v. Pitcairn*, 324 U.S. 117, 125–126 (1945)).

When it denied Mr. Smith's § 60-1507 motion on the issues of "altered trial transcripts, insufficient evidence, and jury inconsistency[,]" the Kansas Court of Appeals noted the trial court had "previously addressed Smith's claims" when it denied his motion for a new trial. *Smith II*, 2018 WL 3796017, at *2.  The Kansas Court of Appeals held Mr. "Smith raised these issues through posttrial motions . . . . [but] [he] should have raised them on direct appeal and they were improperly before the district court in his habeas motion."  *Id.*  So, it affirmed the trial court's decision denying these claims.  *Id*. at *3.[2]

The Kansas Court of Appeals likewise denied Mr. Smith's § 60-1507 claims that Kansas deprived him of "a public trial and right against self-incrimination" because the trial court determined Mr. Smith "should have raised" them "at trial, but he did not" and "should have addressed the issues on direct appeal, but he did not."  *Id*.  Kansas Supreme Court Rule 183(c)(3) provides that:

> A proceeding under [Kan. Stat. Ann. §] 60-1507 ordinarily may not be used as a substitute for direct appeal involving mere trial errors or as a substitute for a second appeal.  Mere trial errors must be corrected by direct appeal, but trial errors affecting constitutional rights may be raised even though the error could have been raised on appeal, provided exceptional circumstances excuse the failure to appeal.

The Kansas Court of Appeals explained what this requirement mandated:

> "Exceptional circumstances" have been defined to include "'unusual events or intervening changes in the law which prevent a movant from reasonably being able to raise all of the trial errors in the first post-conviction proceeding.'"  Exceptional circumstances can include ineffective assistance of counsel.

*Id.* (quoting *State v. Mitchell*, 298 P.3d 349, 353 (Kan. 2013) (further citation omitted)).  The Kansas court found Mr. Smith "failed to assert any exceptional circumstances" explaining why

---

[2]        The Kansas Court of Appeals denied Mr. Smith's claims on procedural grounds, but it also addressed the merits of these claims and held Mr. Smith failed to meet his "burden of designating a record that affirmatively shows prejudicial error" based on these alleged constitutional violations.  *Smith II*, 2018 WL 3796017, at *3.  The court does not evaluate the Kansas Court of Appeals's decision on the merits because Mr. Smith procedurally defaulted on these claims.

he could not raise his constitutional trial errors—right to public trial and right against self-incrimination—on direct appeal. *Id.* Mr. Smith "failed to argue that the district court improperly determined that these issues were deemed waived or barred under the doctrine of res judicata." *Id.* "Instead, Smith presented a summary of his testimony on the merits of the issues and concluded that the State failed to present evidence to rebut his testimony." *Id.* Thus, the Kansas Court of Appeals affirmed the trial court's denial of Mr. Smith's Kan. Stat. Ann. § 60-1507 motion for failing properly to raise these issues in his direct appeal under Kansas law. *Id.*

Mr. Smith failed to raise these issues properly under Kansas procedural rules, so, the court cannot review these claims in a federal habeas petition. *See Coleman*, 501 U.S. at 729 (explaining federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment. This rule applies whether the state law ground is substantive or procedural." (internal citations omitted)). Thus, Mr. Smith's procedural default precludes the court from reviewing grounds one, two, three, five, and six.

To consider procedurally defaulted claims, Mr. Smith must establish either: (1) cause for the default and actual prejudice, or (2) actual innocence. *See Bousley v. United States*, 523 U.S. 614, 622 (1998) (quoting *Murray v. Carrier*, 477 U.S. 478, 485, 496 (1986) (further citation omitted)). The court now turns to these two exceptions.

i.    *Cause and Prejudice Exception*

A petitioner can satisfy the cause-and-prejudice exception by showing that some external factor impeded his efforts to comply with the state's procedural rule, *Coleman*, 501 U.S. at 753 (quoting *Carrier*, 477 U.S. at 488), and by showing that this external factor "worked to his *actual* and substantial disadvantage," *United States v. Frady*, 456 U.S. 152, 170 (1982).

12

Mr. Smith makes no argument supporting this cause and prejudice exception.  But, reading Mr. Smith's Petition liberally, he appears to assert he could not raise the six grounds in his direct appeal because his attorney refused to include these grounds in his appellate brief to the Kansas Court of Appeals.  *See* Doc. 1 at 5 ("I raised all six Issues in every court, but they was tucked away until[] my 60-1507 was the[n] heard and only because my lawyer insisted on it."); *see also id.* at 8 ("I have raised all six of my issues in four stages of Courts.").  And, when he attempted to raise the issues in his pro se supplemental brief supporting his direct appeal to the Kansas Court of Appeals, his briefs were "ordered STRICKEN AND DESTROYED."  *Id.* at 6; *see also* Doc. 18 at 14 ("Petitioner claims that he tried to raise the claim in a pro se supplemental brief to the Kansas Court of Appeals, but as Petitioner was represented by counsel, the court rejected his pro se brief.") (citing Order, *Smith v. State*, No. 108,165 (Kan. Ct. App. Mar. 3, 2014)).  So, reading Mr. Smith's filings liberally, they appear to argue ineffective assistance of counsel for failing to raise these issues in his direct appeal.

Ineffective assistance of counsel can provide cause for procedural default.  *See Murray*, 477 U.S. at 488–89.  But, the exhaustion doctrine, "generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."  *Id.*  "In other words, ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim."  *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  So, "28 U.S.C. §§ 2254(b), (c)—require *that* constitutional claim, like others, to be first raised in state court."  *Id.*  "A claim of ineffective assistance . . . generally must be presented to the state courts as an independent claim before it may be used to establish cause for procedural default."  *Id.* (internal quotation marks and text alteration omitted).  So, even if the court considers Mr.

Smith's assertions as arguing cause for his procedural default, the court can consider ineffective assistance of counsel as cause only if he raised the issue in state court first.

On review of Mr. Smith's Kan. Stat. Ann. § 60-1507 appeal, he argued Mr. Kurth was ineffective because he charged $20,000 to represent him and then refused defend Mr. Smith when he couldn't pay the fee. *See* Appellant Br., *Smith v. State*, No. 17-118,161 (Kan. Ct. App. Nov. 22, 2017). And, Mr. Smith argued his attorney erred by advising him to take the stand and violated his Fifth Amendment right against self-incrimination. *Id.* at 11.[3] But, he never asserted that his counsel was ineffective for failing to raise these five issues in his direct appeal. So, the court cannot consider ineffective assistance of counsel as cause for his procedural default on grounds one, two, three, five, and six because he failed to raise this argument in the state courts when he had the opportunity to raise it in his state habeas petition.

    ii.    *Actual Innocence Exception*

To satisfy the actual innocence exception, a petitioner must demonstrate "factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623–24 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). This requires a petitioner to show that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Id.* (citation and internal quotation marks omitted). "To make a credible showing of actual innocence, a petitioner must support his allegations of constitutional error with new reliable evidence . . . sufficient to show that it is more likely than not that no reasonable juror would have convicted the petitioner in the light of the new evidence." *Frost v. Pryor*, 749 F.3d 1212, 1231–32 (10th Cir. 2014)

---

[3]    In his § 60-1507 Petition filed in the Atchison County District Court, Mr. Smith asserted that he attempted to file a pro se supplemental brief and that his appellate defender refused to assert these issues in his direct appeal. *See* § 60-1507 Motion, No. 16CV51 (Atchison Cnty. Dist. Ct. June 16, 2016) at 14. But, Mr. Smith never raised these arguments or facts in his § 60-1507 appeal, thus abandoning this argument because he failed to give the Kansas Court of Appeals an opportunity to consider it. *See* Appellant Br., *Smith v. State*, No. 17-118,161 (Kan. Ct. App. Nov. 22, 2017).

(citations and internal quotation marks omitted).  "This standard is 'demanding and permits review only in the extraordinary case.'"  *Id.* (quoting *House v. Bell*, 547 U.S. 518, 538 (2006)).  "Simply maintaining one's innocence, or even casting some doubt on witness credibility, does not necessarily satisfy this standard."  *Id.* at 1232.

Mr. Smith asserts he is actually innocent, claiming "[the victim's aunt] talked the girl into saying that the petitioner touched her" and that "it did not even make any sense what the girl had said, [because] she said the petitioner only touched her and she touched him only for a minute or two each time . . . ."  Doc. 2 at 7.  And, he asserts, "the girl told the truth later and said that her aunt [had] talked her into making this stuff up in order to get the petitioner out of their [lives], and the district attorney even threatened the mother by saying they would put her in jail and take her kids away if the girl changed her story."  *Id.*  Mr. Smith's allegation of a conspiracy continues as he asserts that the "Under Sheriff" was "FORCING [the victim's mother] and the victim to court to testify against their will . . . threatening [the victim's mother] by telling her they [would] lock her up and take her kids away if she did not cooperate . . . ."  *Id.* at 19.

Mr. Smith never presents any new, reliable evidence to meet the demanding standard established by *Frost.*  For example, to support his actual innocence claims, Mr. Smith merely refers to supporting documents where Mr. Smith testified that he believed that the victim's mother was intimidated by law enforcement to come testify.  Doc. 2-1 at 116.  And, Mr. Smith presents a newspaper clipping quoting the Atchison County Attorney saying "we will do whatever it takes" referring to bringing the witnesses to Kansas, as evidence of coerced testimony, when in reality the quote cited follows the fact that "the witnesses [were] in Arkansas without a reliable vehicle."  Doc. 2-1 at 117.  Mr. Smith's argument relies on evidence already presented to the trial court or the Kansas Court of Appeals.  *See* Doc. 2 (citing trial transcript and

evidence from the record to show discrepancies in evidence).  In short, Mr. Smith fails to provide

any new and reliable evidence to undermine the testimony presented to the trial court.  So, he

fails to meet *Frost*'s demanding standard to show actual innocence.

The court holds that Mr. Smith procedurally defaulted on grounds one, two, three, five,

and six.  Also, he fails to show that either exception—cause and prejudice or actual innocence—

applies to his claims.  The court thus cannot consider the merits of grounds one, two, three, five,

and six and it dismisses them for that reason.

### B.  Ground Four:  Ineffective Assistance of Counsel

Mr. Smith's ineffective assistance of counsel claims fall into two categories:  (1) claims

addressed in his direct appeal and (2) claims first presented in his Kan. Stat. Ann. § 60-1507

motion.  *See Smith I*, 2015 WL 1122951, at *6–13; *Smith II*, 2018 WL 3796017, at *4–5.  The

Kansas Court of Appeals denied Mr. Smith's ineffective assistance of counsel claims in his

direct appeal and his post-conviction proceedings.  *See Smith I*, 2015 WL 1122951, at *6–13;

*Smith II*, 2018 WL 3796017, at *4–5.  Mr. Smith fails to argue Kansas state courts erred when

they denied his claims; instead, he reasserts the alleged errors of counsel that he raised in state

court.  *See* Docs. 1, 2.

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must

exhaust his remedies in state court."  *O'Sullivan*, 526 U.S. at 842 (1999).  "The exhaustion

requirement is satisfied if the federal issue has been properly presented to the highest state court,

either by direct review of the conviction or in a postconviction attack."  *Dever v. Kansas State

Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994); *see also Ontiveros v. Pacheco*, 760 F. App'x

601, 603 (10th Cir. 2019) (quoting *Dever*, 36 F.3d at 1534).  And, the "exhaustion requirement is

satisfied if the highest court exercises discretion not to review the case."  *Id.* at 1534–35.  As

discussed below, in Mr. Smith's direct appeal to the Kansas Court of Appeals, he raised an ineffective assistance of counsel claim, and he filed a Petition for Review to the Kansas Supreme Court.  *See* Docket, *Smith I*, No. 109,165 (Kan. Ct. App.).  So, Mr. Smith exhausted both bases for his ineffective assistance of counsel claims.

And, as discussed in Section III.A, above, Mr. Smith exhausted available state remedies for his state habeas petition because he appealed the trial court's denial to the Kansas Court of Appeals.  *See* Kan. Sup. Ct. R. 8.03B (stating a party does not have to appeal an adverse decision to the Kansas Supreme Court to exhaust available state remedies); *see also Ellis*, 872 F.3d 1081–82 (state rules define exhaustion for AEDPA review).  So, the court next considers the substance of Mr. Smith's ineffective assistance of counsel claims raised in his appeal to the Kansas Court of Appeals.

### i.    Legal Standard

To prevail on a claim that counsel's assistance was so defective to require reversal of a conviction, a convicted defendant must establish two components:  (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The first component requires "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.*  The second component requires "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id.*

"To establish constitutionally deficient performance, 'the defendant must show that counsel's representation fell below an objective standard of reasonableness.'"  *Frost v. Pryor*, 749 F.3d 1212, 1224 (10th Cir. 2014) (quoting *Strickland*, 466 U.S. at 688).  The petitioner

here—Mr. Smith—has the burden to identify acts or omissions of counsel that demonstrate lack of reasonable professional judgment. *Strickland*, 466 U.S. at 690. Then the court must determine whether these "identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* The court must indulge a strong presumption that counsel acted reasonably to eliminate the distorting effects of hindsight. *Id.* at 689.

And, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 694). "That requires a substantial, not just conceivable, likelihood of a different result." *Id.* (internal quotation marks and citation omitted).

In the context of this proceeding before this court, the standard of review for a habeas claim of ineffective assistance of counsel is "'doubly deferential.'" *Id.* at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The court takes a "highly deferential look at counsel's performance through the deferential lens of § 2254(d)." *Id.* (internal quotation marks and citation omitted). "The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). So, the petitioner—Mr. Smith—"must demonstrate that it was necessarily unreasonable for" the Kansas Court of Appeals to conclude Mr. Smith failed to satisfy *Strickland*'s prongs. *Cullen*, 563 U.S. at 190. And, federal habeas review is "limited to the record that was before" the Kansas Court of Appeals when it adjudicated the claim on the merits. *Id.* at 181.

ii.    *Ineffective Assistance of Counsel Claims Raised in Mr. Smith's Direct Appeal*

In Mr. Smith's direct appeal, he argued the trial court erred when it denied his motion for new trial based on ineffective assistance of counsel.  Appellant Br., *State v. Smith*, No. 13-109165-A, 2014 WL 900733, at *9 (Kan. Ct. App. Feb. 3, 2014).  Mr. Smith raised eight alleged errors by counsel on his direct appeal.  *Id.* at *8–9.  Specifically:

> Mr. Smith alleged ineffective assistance of counsel by his trial attorney, arguing that his trial attorney performed deficiently when he (1) failed to arrange for an independent psychological examination of B.N.M., (2) failed to request a change of venue, (3) failed to request a copy of recorded telephone calls between Mr. Smith and B.N.M.'s mother, (4) failed to request a continuance of the trial after learning of the specific dates that B.N.M. alleged sexual contact occurred, (5) failed to request a "for cause" strike of a jury panel member who had directly worked with B.N.M. in school, (5) failed to request a strike of the whole jury panel after learning that almost half of the panel knew one of the investigating police officers, (6) failed to contemporaneously object to the admission of prior bad acts evidence, (7) failed to admit a letter into evidence that tended to discredit B.N.M., and (8) failed to cross examine B.N.M. about prior inconsistent statements.

*Id.* (Mr. Smith's appellate brief includes two issues listed as number 5).

Mr. Smith raises the following six issues—ones that he originally raised in his direct appeal—in his federal habeas Petition:

- **Issue 1** – Mr. Smith alleges his trial counsel lied about discussing a psychological evaluation of B.N.M. and he asserts his "trial lawyer NEVER discussed nothing about hav[ing] the examination done with the victim or the defendant, he just told the defendant after the Greggs hearing that the victim would not agree to have the examination done because she was living in Arkansas."  Doc. 2 at 22.
- **Issue 2** – Mr. Smith asserts he "demanded his attorney to request a change of venue" but his trial counsel refused because "he did not think the newspaper coverage was out of the ordinary[.]"  Doc. 2 at 17.
- **Issue 3** – Mr. Smith asserts his trial attorney "said he would raise all the issues at trial with the mother concerning about all the things she had told the defendant on the phone . . . ."  Doc. 2 at 19.
- **Issue 6** – Reading Mr. Smith's pleading liberally, he alleges his "trial lawyer only made one objection" and it was his trial counsel which brought in his prior bad acts.  Doc. 2 at 18, 22.

- **Issue 7** – Mr. Smith asserts trial counsel erred when he did not use "the letter the victim wrote to her aunt" that, he asserts, "would of proved the victim was lying and making false statements[.]"  Doc. 2 at 17.
- **Issue 8** – Mr. Smith alleges his trial attorney never used prior inconsistent statements from the victim from the police report.  Doc. 2 at 18.

The court only considers the issues Mr. Smith raises in his federal habeas petition.  So, it will only consider these six claims.  The court will not consider Issue 4 or Issue 5—claiming his counsel failed to request a continuance and failing to ask the court to strike jurors for cause. While Mr. Smith raised these two issues in his direct appeal, he does not raise them now in his petition to this court.

The Kansas Court of Appeals addressed the merits of each argument because the trial court "held an evidentiary hearing on the motions, [and the record [was] sufficiently complete for [the Kansas Court of Appeals] to appropriately address [Mr.] Smith's claims."  *See Smith I*, 2015 WL 1122951, at *5.  It affirmed the trial court's decision denying Mr. Smith's ineffective assistance of counsel claims for all eight issues.  *See id.* at *7–13.

Since the Kansas Court of Appeals rejected Mr. Smith's "ineffective assistance claim on the merits" the court evaluates his claims "through AEDPA's deferential lens."  *Frost*, 749 F.3d at 1225.  So, the court may grant Mr. Smith's requested relief only if he "demonstrates that the [Kansas Court of Appeals's] decision was 'contrary to, or involved an unreasonable application of, clearly established' Supreme Court law."  *Id.* (quoting 28 U.S.C. § 2254(d)(1)).  "It is past question that the rule set forth in *Strickland* qualifies as clearly established Federal law, as determined by the Supreme Court of the United States."  *Williams v. Taylor*, 529 U.S. 362, 390 (2000) (discussing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).  In denying Mr. Smith's ineffective assistance of counsel claims, the Kansas Court of Appeals evaluated Mr. Smith's claims under Kansas Supreme Court precedent in *Harris v. State*.  *Smith I*, 2015 WL 1122951, at

*6 (citing *Harris v. State*, 204 P.3d 557 (Kan. 2009)).  *Harris* holds:  (1) a defendant "must initially establish the counsel's performance was constitutionally deficient," and (2) "must then establish that counsel's performance prejudiced the defense."  204 P.3d at 560.  Our court has held that *Harris v. State* is consistent with *Strickland*.  *Evans v. Kansas*, No. 12-3002-SAC, 2014 WL 839232, at *12 (D. Kan. Mar. 4, 2014), *aff'd*, 580 F. App'x 631 (10th Cir. 2014).  In *Evans*, Judge Crow reasoned *that* the Kansas Court of Appeals "required petitioner to establish that:  (1) counsel's performance was constitutionally deficient, and (2) counsel's deficient performance prejudiced the defense."  *Id.* (discussing *Harris*, 204 P.3d at 560).  Thus, Judge Crow reasoned, *Harris* is consistent with *Strickland*.  *Id.*  The court agrees with this reasoning.

On *Issue 1*, Mr. Smith asserted that counsel erred by failing to set up a psychological examination of B.N.M.  *Smith I*, 2015 WL 1122951, at *11.  The Kansas Court of Appeals reasoned that Mr. Kurth did not err when he did not "pursue a psychological evaluation of B.N.M." after the trial court held an evidentiary hearing and determined whether Kansas case law, *State v. Gregg*, 602 P.2d 85 (Kan. 1979), supported a psychological examination of B.N.M.  *Id.*  Mr. Kurth investigated school records and other records of B.N.M. "but did not find anything indicating B.N.M. had a mental deficiency or anything of that nature."  *Id.*  The Kansas Court of Appeals held Mr. Smith failed to show Mr. Kurth acted unreasonably or that his failure to obtain an evaluation "would have impacted B.N.M.'s credibility to the extent that the jury would have found him not guilty."  *Id.*  The Kansas Court of Appeals denied this issue because the record showed Mr. Kurth decided not to pursue a psychological examination after concluding that "the case facts were not even close to showing a need for the examination of B.N.M."  *Id.*  The record supports the Kansas Court of Appeals's findings, and it reasonably applied *Strickland* to Mr. Smith's allegations of ineffective assistance.  As *Strickland* makes clear, "strategic choices made

after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigations." 466 U.S. at 690–91. Given the latitude afforded Mr. Kurth when making strategic decisions after investigating, and the recognized presumption of reasonable performance, it was reasonable for the Kansas Court of Appeals to conclude that Mr. Smith failed to meet his burden of demonstrating deficient performance.

On *Issue 2*—failing to request a change of venue—the Kansas Court of Appeals held no error or prejudice resulted from counsel failing to request a change of venue. *Smith I*, 2015 WL 1122951, at *11–12. Mr. Kurth testified in the trial court on Mr. Smith's motion for a new trial that "he believed the court would not change the venue because the coverage in the newspapers and on the radio was nothing out of the ordinary," and that jury members did not show prejudice against Mr. Smith during voir dire. *Id.* at *11. And, while "3 of the 36 potential jurors had heard about the case before trial . . . there was no real danger Smith was not going to receive a fair trial due to publicity" because all "three of the potential jurors who had heard about the case through the press were struck during peremptory strikes by the defense." *Id.* at *12. "Since none of the individuals who actually sat on the jury had heard publicity about the case, it is clear the case was tried before a jury unaffected by publicity just as if venue had been changed." *Id.* So, the Kansas Court of Appeals held Mr. Smith failed to show Mr. Kurth erred by not requesting a change of venue or that the alleged error prejudiced him. *Id.* The Kansas Court of Appeals reasonably applied law consistent with *Strickland* because Mr. Smith failed to show any prejudice from not changing the venue of his trial.

On *Issue 3*—Mr. Smith asserted Mr. Kurth erred when he failed to investigate phone calls allegedly recorded with the victim's mother, Ms. Robinson. *Smith I*, 2015 WL 1122951, at *13. The Kansas Court of Appeals, in denying this issue, reasoned that the phone calls likely were inadmissible as statements expressing an opinion about the credibility of a witness. *Id.* And, it was "unclear . . . how Robinson's statements that she did not want to testify or felt forced to testify would have affected the jury's evaluation of B.N.M.'s credibility." *Id.* It concluded "the verdict would not have been different had Kurth further investigated the recorded phone calls." *Id.* The Kansas Court of Appeals applied law consistent with *Strickland* in holding Mr. Smith failed to show prejudice from this error. Mr. Smith failed to show how this evidence could have affected B.N.M.'s credibility or how the choice not to pursue these phone calls prejudiced him.

On *Issue 6*—failing to object more often and for allowing evidence of prior bad acts into the trial—the Kansas Court of Appeals denied this issue because Mr. Kurth "made a strategic decision not to object and thereby draw attention to the evidence of prior bad acts." *Smith I*, 2015 WL 1122951, at *8. Mr. Kurth testified that he knew about the prior bad acts but he didn't want to draw attention to them and "he chose to make a motion for mistrial and allow Smith to deny the prior bad acts when he testified." *Id.* at *7. So, the court found, Mr. Kurth made a strategic decision not to object. *Id.* at *8; *see Strickland*, 466 U.S. at 689 (petitioner must overcome strong presumption trial counsel actions were "sound trial strategy" (internal quotation marks omitted). And, the trial "court analyzed how it might have ruled had the issue been brought up in a pretrial hearing . . . [finding] most of the prior bad acts evidence would have been admissible because it was relevant to the material issue of why B.N.M. was scared of Smith and why she did not tell anyone about the sexual abuse sooner." *Smith I*, 2015 WL 1122951, at *8. Mr. Smith also failed to show prejudice from Mr. Kurth's actions. The Kansas Court of

Appeals did not apply law contrary to *Strickland* when it denied this issue, and the record supports its holding.

On *Issue 7*, Mr. Smith argued Mr. Kurth erred by failing to introduce into evidence a letter B.N.M. wrote to her Aunt Amanda that would have discredited her statements.  *Smith I*, 2015 WL 1122951, at *9.  Mr. Smith asserted the letter would have discredited B.N.M. because it "referred to a time when Robinson, B.N.M., and her brothers had left Smith but then returned to live with him."  *Id.*  "The first part of the letter said it had been the children's idea to move back in with Smith, not Robinson's."  *Id.*  The Kansas Court of Appeals reasoned Mr. Kurth did not err because he reviewed the letter and decided not to use it because it "discussed other matters harmful to his client."  *Id.*  Decisions about which evidence to present are strategic decisions left to trial counsel's discretion.  *See Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir. 1997).  Mr. Kurth decided not to seek to admit the letter into evidence after evaluating the cost and benefit to his client.  The Kansas Court of Appeals applied law consistent with federal law when holding Mr. Kurth did not err after reviewing the letter and choosing not to offer it as evidence because of the damaging evidence it also contained.  *See Strickland*, 466 U.S. at 689 (strong presumption that counsel's actions are "sound trial strategy").

On *Issue 8*—Mr. Smith asserted Mr. Kurth erred by failing to cross examine B.N.M. on inconsistent statements.  *Smith I*, 2015 WL 1122951, at *10.  "B.N.M. testified she had never told anyone about the sexual contact because she was afraid of Smith . . . ."  *Id.* at *2.  But, Mr. Smith asserted B.N.M. previously had told her aunt and uncle about the sexual abuse.  *Id.* at *10. And, Mr. Smith argued B.N.M. made an inconsistent statement when she spoke to officers about sexual abuse about whether she or Mr. Smith took off her clothes.  *Id.*  So, Mr. Smith argued Mr. Kurth erred by not questioning B.N.M. on these inconsistent statements to discredit B.N.M.  *Id.*

The Kansas Court of Appeals denied relief on this issue because Mr. Kurth "testified he did not believe introducing the statements would have helped." *Id.* And, Mr. Kurth "also stated he and Smith decided not to have Amanda testify, despite the possibility it could reveal inconsistencies in B.N.M's statements, because Amanda's testimony would have been more harmful than helpful to Smith's defense." *Id.* And, the Kansas Court of Appeals reasoned, the decision "whether to call a witness or how to cross-examine a witness are matters of trial strategy[.]" *Id.* "There is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'" *Harrington*, 562 U.S. at 109 (quoting *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (*per curiam*)). The record shows Mr. Smith failed to overcome this strong presumption. The Kansas Court of Appeals did not apply law contrary to Supreme Court precedent when assessing trial counsel's performance and denying this issue.

In sum, Mr. Smith fails to make any argument that satisfies *Strickland* or that the Kansas Court of Appeals erred by denying his claim. Mr. Smith's conclusory allegations about Mr. Kurth's performance and prejudice resulting from these decisions do not satisfy *Strickland*'s high burden. When reviewing "an ineffective assistance of counsel claim, [the court must] start by presuming, absent a showing to the contrary, that an attorney's conduct is objectively reasonable because it could be considered part of a legitimate trial strategy." *Bullock v. Carver*, 297 F.3d 1036, 1047 (10th Cir. 2002), *cert. denied*, 537 U.S. 1093 (2002). The record supports the Kansas Court of Appeals's holding that Mr. Smith failed to meet his burden under *Strickland*, and it did not apply law contrary to established federal law by denying Mr. Smith's ineffective assistance of counsel claim. *See Clary v. Cline*, No. 18-CV-3140-JAR, 2020 WL 3791868, at *9 (D. Kan. July 7, 2020) (denying federal habeas claim for ineffective assistance of counsel claims in part because petitioner failed to show Kansas Court of Appeals's decision was "contrary to, or

involved an unreasonable application of, clearly established federal law"). Nor has Mr. Smith presented any new evidence that would allow this court to find his trial counsel performed deficiently or that prejudice resulted. So, the court denies Mr. Smith's ineffective assistance of counsel claims for all issues raised in his direct appeal.

iii.     *Ineffective Assistance of Counsel Issues Raised for the First Time in Mr. Smith's State Habeas Petition*

In Mr. Smith's § 60-1507 appeal to the Kansas Court of Appeals, he argued ineffective assistance of counsel. He alleged that his trial counsel, Mr. Kurth, charged him $20,000 to represent him and erroneously advised Mr. Smith to testify. *See* Appellant Br., *Smith v. State*, No. 17-118,161, 2017 WL 5894952, at *9 (Kan. Ct. App. Nov. 22, 2017). In this federal habeas action, he argues "the Attorney that was court appointed to the petitioner was also charging the petitioner a twenty thousand dollar fee on the side and when petitioner was unable to produce the full amount, than the attorney simply did no more for the petitioner." Doc. 2 at 2. In Mr. Smith's federal habeas briefing, he splits counsel's alleged erroneous advice to testify between his ineffective assistance of counsel claim and his Fifth Amendment claim asserted in Ground Five. *See* Doc. 2.[4]

The Kansas Court of Appeals denied Mr. Smith's ineffective assistance of counsel claim based on the retainer issue and resulting alleged deficiencies for two reasons: (1) Mr Smith "failed to present evidence to support his assertion that Kurth provided deficient representation or to show that Smith had suffered any prejudice[,]" *id*. at *4, (2) failing to "present a sufficient

---

[4]     As discussed above, Mr. Smith's fifth ground for federal habeas relief, self-incrimination, was procedurally defaulted because he failed to raise the issue in Kansas state courts. *See supra* Sec. III.A. But, the Kansas Court of Appeals nonetheless addressed the merits of this claim based on the evidence, or lack thereof, that Mr. Smith presented in his § 60-1507 evidentiary hearing before the trial court. *See Smith II*, 2018 WL 3796017, at *4

record for" the Kansas Court of Appeals to "determine whether the district court's factual findings were supported by substantial competent evidence[,]" *id.* at *3.

*First*, the Kansas Court of Appeals addressed the merits of Mr. Smith's claim of ineffective assistance of counsel consistent with *Strickland v. Washington* standards.  The court of appeals expressed its standard as follows:

> To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish (1) that the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, i.e., that there is a reasonable probability the jury would have reached a different result absent the deficient performance.

*Smith II*, 2018 WL 3796017, at *4 (citing *Sola-Morales v. State*, 335 P.3d 1162, 1168 (Kan. 2014) (relying on *Strickland v. Washington*, 466 U.S. 668, 687 (1984))).

On Mr. Smith's claim that Mr. Kurth charged him a $20,000 retainer and then deficiently represented him when he could not pay the fee, the Kansas Court of Appeals split the issue into two parts.  It reasoned that Mr. Smith's allegation that Mr. Kurth charged $20,000—after the court had appointed him as counsel—was "not a matter for an ineffective assistance of counsel claim, as it [did] not pertain to Kurth's performance in Smith's defense."  *Id.* at *5.  After reviewing the record and Mr. Smith's § 60-1507 filings, he never explains how Mr. Kurth's alleged action of collecting a fee prejudiced his case.  The Kansas Court of Appeals applied law consistent with federal law in holding Mr. Smith failed to meet his burden to show his attorney acted deficiently based on this alleged action.

The closest he comes are "the allegations that Kurth withheld and failed to acquire evidence" after Mr. Smith could not pay the fee because these were "questions regarding Kurth's representation."  *Id.*  But, the Kansas Court of Appeals considered that question.  Specifically, it considered whether Mr. Smith's allegation that Mr. Kurth failed to offer into evidence the

letter—discussed in Issue 7, above—allegedly constituted ineffective assistance of counsel.  *Id.*
The Kansas Court of Appeals declined to "reconsider Kurth's decision not to use the letter in
trial."  *Id.*  As for any other alleged errors, the Kansas Court of Appeals reasoned Mr. Smith
"failed to show how Kurth's actions were deficient representation rather than strategic
decisions."  *Id.* at *5.  "He also failed to show the effect Kurth's actions had on the trial."  *Id.*

This court is limited to the record presented to the state court.  *See Cullen*, 563 U.S. at
182 (holding "that review under § 2254(d)(1) is limited to the record that was before the state
court that adjudicated the claim on the merits").  On review of Mr. Smith's § 60-1507
evidentiary hearing, he presented the only evidence to the trial court.  *See* Transcript, *Smith v.
State*, No. 2016CV51 (Atchison Cnty. Dist. Ct. May 26, 2017).  In his § 60-1507 motion to the
trial court, Mr. Smith alleged Mr. Kurth had erred but did not argue or provide evidence
rebutting "the strong presumption of competence[.]"  *Cullen*, 563 U.S. at 190; *see also* § 60-1507
Motion at 9–11,  No. 2016CV51 (Atchison Cnty. Dist. Ct. June 16, 2016) (asserting Mr. Kurth
erred by (1) charging Mr. Smith $20,000 (2) refusing to admit a letter from B.N.M. to her aunt,
and (3) not issuing a subpoena for allegedly recorded phone calls between Mr. Smith and Ms.
Robinson).  Nor did Mr. Smith argue these alleged errors prejudiced his case.  *See* § 60-1507
Motion, No. 2016CV51 (Atchison Cnty. Dist. Ct. June 16, 2016).  Thus, the Kansas Court of
Appeals applied *Strickland* reasonably when it concluded Mr. Smith had failed to establish Mr.
Kurth erred or that prejudice resulted.

*Second*, the Kansas Court of Appeals denied Mr. Smith's ineffective assistance of
counsel claims because, under Kansas law, a "party asserting that prejudicial error has occurred
has the burden of designating a record that affirmatively shows the error."  *State v. Sisson*, 351
P.3d 1235, 1239 (Kan. 2015).  The Kansas Court of Appeals explained Mr. Smith had failed to

provide an adequate record for the appellate court to review "whether the district court's factual findings were supported by substantial competent evidence."  *Smith II*, 2018 WL 3796017, at *5. It provided "[a]lthough Smith provided select pages of the transcript that pertained to his claims, we must analyze Kurth's performance under the totality of the circumstances."  *Id.*  "The limited transcript [did] not permit such a review."  *Id.*  The Kansas Court of Appeals did not apply law contrary to Supreme Court precedent when requiring Mr. Smith to provide a record affirmatively showing alleged errors of counsel.  *See United States v. Brody*, 705 F.3d 1277, 1280–81 (10th Cir. 2013) ("if the record provided is insufficient, this court must affirm the judgment of the court below").

In his federal habeas petition, Mr. Smith splits his self-incrimination claim between Ground Four (Ineffective Assistance of Counsel) and Ground Five (Self-Incrimination).  Mr. Smith presented his self-incrimination claim separately from his ineffective assistance of counsel claim in his § 60-1507 motion to the trial court, asserting Mr. Kurth violated his Fifth Amendment rights when he "was made to testify in order to support a conviction."  *See* § 60-1507 Motion at 11, No. 2016CV51 (Atchison Cnty. Dist. Ct. June 16, 2016).  But, in his § 60-1507 appeal to the Kansas Court of Appeals, he briefed his self-incrimination claim with his ineffective assistance of counsel claim.  *See* Appellant Br. at 9, No. 17-118,161 (Kan. Ct. App. Nov. 22, 2017) ("With regard to Mr. Smith's claim of ineffective assistance of counsel . . . he testified at trial after advice of counsel to do so and that advice was erroneous").  The Kansas Court of Appeals addressed Mr. Smith's self-incrimination claim separately from his ineffective assistance of counsel claims—consistent with how he first had raised the issue with the trial court.  *See Smith II*, 2018 WL 3796017.  The Kansas Court of Appeals affirmed the trial court's denial of this issue—discussed in Section III.A, above—because Mr. Smith should have raised

the issue in his direct appeal as a trial error and he "failed to argue that the district court improperly determined that these issues were deemed waived or barred under the doctrine of res judicata." *Id.* at *3. Mr. Smith fails to challenge the Kansas Court of Appeals's decision denying this claim in his federal habeas petition. *See* Docs. 1, 2.

Even if Mr. Smith had presented his ineffective assistance of counsel/self-incrimination claim properly in state court, Mr. Smith fails to meet either prong of *Strickland*. He asserts his counsel "tricked" him into testifying and his counsel told him "that it would make him look guilty if he did not take the stand as if he had something to hide." Doc. 2 at 18. He does not argue or present any evidence rebutting the strong presumption counsel acted competently when he advised him to testify. *See Strickland*, 466 U.S. at 690. He fails to direct the court to any evidence of counsel's error, explain how his choice to testify prejudiced his case, or provide any supporting authority for this claim. The court denies Mr. Smith's claim that counsel erroneously advised him to testify asserted in his Ground Four: Ineffective Assistance of Counsel.

The Kansas Court of Appeals applied law consistent with Supreme Court precedent when it held Mr. Smith failed to meet his burden to establish ineffective assistance of counsel. Mr. Smith does not challenge the Kansas Court of Appeals's decision denying his claims nor does he present any new evidence to support his arguments. Thus, the court denies Mr. Smith's claims for ineffective assistance of counsel raised in his § 60-1507 motion.

### C. Ground Six: Inconsistent Jury Verdicts

*Last*, Mr. Smith argues the "verdicts of Guilty and Not Guilty are inconsistent with each other based on the same evidence." Docs. 1 at 11, 2 at 2. The State makes two arguments in response: (1) Mr. Smith procedurally defaulted on this ground[5] and (2) in the alternative, this

---

[5]     Mr. Smith procedurally defaulted on this claim for the reasons discussed in Section III.A, above.

claim is not one "upon which relief can be granted."  Doc. 18 at 22.  So, it asserts, the court

cannot grant federal habeas relief based on inconsistent jury verdicts.  *See id.*  The court agrees

with the State.

Federal habeas exists only to correct violations of the Constitution.  28 U.S.C. § 2254(a).

This ground fails to allege such a violation.  Supreme Court precedent establishes "the

unreviewable power of a jury to return a verdict of not guilty for impermissible reasons."  *United

States v. Powell*, 469 U.S. 57, 63 (1984) (internal quotation marks and citation omitted).  The

"possibility that the inconsistent verdicts may favor the criminal defendant as well as the

Government militates against review of such convictions at the defendant's behest."  *Id.* at 65.

And, "such inconsistencies often are a product of jury lenity," and courts recognize the jury's

role "in criminal trials, as a check against arbitrary or oppressive exercises of power by the

Executive Branch."  *Id.*; *see also Dowling v. United States*, 493 U.S. 342, 354–55 (1990) ("In

any event, inconsistent verdicts are constitutionally tolerable." (citing *Standefer v. United States*,

447 U.S. 10, 25 (1980))).

In short, Mr. Smith fails to explain how inconsistent jury verdicts clash with the

Constitution or Supreme Court precedent.  Federal habeas relief is unavailable for Mr. Smith's

claim that the jury returned inconsistent verdicts.  The court thus denies petitioner's sixth and

final ground for § 2254 relief.[6]

---

[6]     Mr. Smith also fails to explain how the jury's verdicts were inconsistent.  *See* Docs. 1, 2.  On
review of the trial transcripts for all three charges, the jury found Mr. Smith not guilty of rape but found
him guilty of aggravated indecent liberties with a child.  Transcript at 309–12, *State v. Smith*, No. 2011
CR 258 (Atchison Cnty. Dist. Ct. Feb. 15, 2012).  Under Kansas law, rape and aggravated indecent
liberties with a child are separate crimes requiring proof of different elements.  *Compare* Kan. Stat. Ann.
§ 21-5506 (Indecent liberties with a child; aggravated indecent liberties with a child) *with* Kan. Stat. Ann.
§ 21-5503(a) (Rape).  The jury's verdicts are not inconsistent.  To put it simply, the jury rationally could
have found that the prosecution carried its burden on the former but not the latter.

IV.        **Conclusion**

Mr. Smith procedurally defaulted on grounds one, two, three, five, and six.  He fails to argue cause and prejudice or actual innocence which would allow federal habeas review.  So, the court dismisses those claims because it cannot consider them on their merits.  He also fails to make any argument the Kansas state courts erred when denying his ineffective assistance of counsel claims.  The court finds the Kansas Court of Appeals did not apply law contrary to established federal law or unreasonably apply federal law in denying his ineffective assistance of counsel claims.  The court thus denies federal habeas relief on this ground.

V.        **Certificate of Appealability**

Finally, the court must decide whether to certify any of Mr. Smith's issues for appeal. Rule 11 of the Rules Governing Section 2254 Cases requires the court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Without such a certificate, a petitioner may not appeal the denial of his or her habeas petition.  But, "[i]f the court denies a certificate, the [petitioner] may . . . seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22."  Rules Governing Section 2254 Cases, Rule 11(a).

Under 28 U.S.C. § 2253(c)(2)–(3), the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicate[s] which specific issue or issues satisfy [that] showing[.]"  A petitioner can satisfy this standard by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[,]" or that the issues presented in the petition are "'adequate to deserve encouragement to proceed further.'"  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983), *superseded in*

*part by* 28 U.S.C. § 2253).  When the court bases its ruling on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.* at 478.

Here, the court concludes that no certificate of appealability should issue.  Nothing suggests that the court's rulings on any issues in this case are debatable or wrong, and no record authority suggests that the Tenth Circuit would resolve this case differently.  The court thus declines to issue a certificate of appealability for any of Mr. Smith's claims.  Mr. Smith may not appeal this court's decision to deny a certificate, but he may seek a certificate of appealability from the Tenth Circuit.  *See* Rules Governing Section 2254 Cases, Rule 11(a).[7]

**IT IS THEREFORE ORDERED BY THE COURT THAT** David Lawrence Smith's Petition for Writ of Habeas Corpus (Doc. 1) is denied and no certificate of appealability shall issue.

**IT IS SO ORDERED.**

**Dated this 15th day of April, 2021, at Kansas City, Kansas.**

> s/ Daniel D. Crabtree
> **Daniel D. Crabtree**
> **United States District Judge**

---

[7]      "If the court denies a certificate, the parties may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22."  Rules Governing Section 2254, Rule 11(a), available at https://www.uscourts.gov/rules-policies/current-rules-practice-procedure (last visited Apr. 13, 2021).